IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TONAL SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1197-LPS |
| | ) | |
| ICON HEALTH & FITNESS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

Presently pending before the Court in this patent infringement suit is Plaintiff and Counterclaim Defendant Tonal Systems, Inc.'s ("Tonal") motion to dismiss Defendant and Counterclaim Plaintiff ICON Health & Fitness, Inc.'s ("ICON") counterclaims for indirect and willful infringement (the "counterclaims"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (D.I. 11) For the reasons set forth below, the Court recommends that Tonal's Motion be GRANTED-IN-PART and DENIED-IN-PART.

## I. BACKGROUND

Both parties in this case operate in the field of personal exercise equipment. Tonal, a Delaware corporation, creates and manufactures a strength training machine. (D.I. 1 at ¶ 2) ICON is also a Delaware corporation; it markets and sells a variety of exercise-related products, such as its NordicTrack Fusion devices. (D.I. 8 at 7)

Tonal filed its Complaint in this case on September 8, 2020. (D.I. 1) With the Complaint, Tonal sought a declaratory judgment of non-infringement with respect to two of ICON's patents: United States Patent Nos. 10,709,925 (the "'925 patent") and 10,758,767 (the

"'767 patent" and collectively with the '925 patent, the "patents-in-suit"). (D.I. 1 at ¶ 1)[1] The '925 patent, entitled "Strength Training Apparatus," claims various embodiments of just that: a strength training apparatus. ('925 patent at 1) For example, claim 1 of that patent is to a strength training apparatus that includes, *inter alia*, a "tower[,]" two "arm[s] pivotally coupled" with the tower, two "pulley[s]" each coupled to an arm, two "cable[s]" that each extend through an arm and a pulley, a "magnetic mechanism" coupled to the cables that is configured to provide resistance when the pulley system is engaged, and a "control panel" with different components. (*Id.*, col. 14:17-43) The '767 patent, titled "Resistance Mechanism in a Cable Exercise Machine," similarly concerns an exercise machine; claim 1 of that patent is to a cable exercise machine comprising, *inter alia*, a "tower[,]" two "vertical guide[s]" incorporated into the tower, two "pull cable[s]" each routed through a "pulley[,]" an "electromagnetic unit" linked to the pull cables that is configured to provide levels of resistance, and a "control panel" configured in a certain way. ('767 patent at 1; *see also id.*, cols. 12:64-13:17)

The Complaint was filed in response to a letter that ICON sent to Tonal on August 21, 2020 (the "August 21, 2020 letter"); in that letter, ICON "expressly accused Tonal of infringing the [p]atents-in-[s]uit." (D.I. 1 at ¶ 13; *see also* D.I. 8 at 10) The August 21, 2020 letter accused "Tonal's strength-training cable machines" of practicing "at least claim 1" of both the '925 patent and the '767 patent. (D.I. 1, ex. C at 1-2) It also provided an explanation of why that was so, which largely consisted of ICON listing the various limitations set out in the respective claims and asserting that Tonal's machines contained each of those limitations. (*Id.*)

---

[1] The patents-in-suit are attached as Exhibits A and B to Tonal's Complaint. (D.I. 1, exs. A-B) Further citation to the patents-in-suit will be to the "'925 patent" or the "'767 patent."

2

On September 30, 2020, ICON filed its Answer and Counterclaims. (D.I. 8) There are two counterclaims contained therein, which allege that Tonal's "strength training apparatus or cable exercise machine ('Tonal Device')" directly, indirectly and willfully infringes "at least claim 1" of the '925 patent and '767 patent, respectively. (*Id*. at 5-15)

In response, Tonal filed the Motion on October 21, 2020. (D.I. 11) The Motion was fully briefed as of November 12, 2020. (D.I. 14) On January 4, 2021, the Motion was referred to the Court for resolution by United States District Chief Judge Leonard P. Stark. (D.I. 16) The Court heard oral argument on the Motion on May 3, 2021. (Hereinafter, "Tr.")

Further relevant information will be set out in Section III.

## II. STANDARD OF REVIEW

The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Courts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint. *Princeton Digital Image Corp. v. Konami Digital Ent. Inc*., Civil Action No. 12-1461-LPS-CJB, 2017 WL 239326, at *3 (D. Del. Jan. 19, 2017) (citing cases).

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11 (citation omitted). Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III. DISCUSSION

With the instant Motion, Tonal challenges the adequacy of ICON's counterclaims as they pertain to indirect infringement and willful infringement. (D.I. 12) The Court will address these issues in turn.

### A. Indirect Infringement

Tonal first moves to dismiss ICON's counterclaims to the extent they allege indirect infringement. The Court will initially take up any claim of induced infringement, and then it will address any claim of contributory infringement.[2]

#### 1. Induced Infringement

A party asserting a claim of induced infringement must plead facts plausibly demonstrating that there has been direct infringement, and that "the alleged inducer knew of the

---

[2] As Tonal notes, (D.I. 12 at 4; Tr. at 5), ICON gets off to a poor start here, since in its counterclaims, ICON did not even bother to state whether it is alleging induced infringement, contributory infringement, or both. Instead, all ICON said therein is that it is alleging "indirect infringement[.]" (D.I. 8 at 11, 13) The Court declines to conclude (as Tonal suggests it should), (D.I. 12 at 4), that this deficiency, standing alone, is enough to warrant dismissal of the indirect infringement claims. But it certainly is a pretty lazy way to plead induced or contributory infringement. A note to patentees bringing claims in our Court: Do not do this. If you are pleading "induced infringement" or "contributory infringement" then somewhere in the counts/claims: (1) actually use those words (or variations thereof); (2) make some reference to the elements of those claims; and (3) plead facts relating to those elements.

4

patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *see also Helios Streaming, LLC v. Vudu, Inc.*, Civil Action No. 19-1792-CFC-SRF, 2020 WL 2332045, at *2 (D. Del. May 11, 2020), *report and recommendation adopted* 2020 WL 3167641 (D. Del. June 15, 2020). "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (citation omitted).

Tonal makes two primary arguments as to why the induced infringement allegations are wanting. For the reasons set forth below, while the induced infringement counterclaims surely could have been better pleaded, the Court concludes that they should survive.

Tonal first argues that ICON's allegations are insufficient to explain what it is that Tonal *did to encourage* another's infringement. (D.I. 12 at 5-6; D.I. 14 at 4-5) For context here, the counterclaims state that (as relating to the claims of indirect infringement) the direct infringers are the "users of the Tonal Device[.]" (D.I. 8 at 11, 13) And the counterclaims explain how the Tonal Device reads on claim 1 of the patents-in-suit (i.e., why and how the device contains all of the limitations that an apparatus must have to infringe those claims), in a manner similar to how ICON alleged infringement in the August 21, 2020 letter. (*See id.* at 10)[3] Then, in setting out

---

[3] To be sure, these allegations (i.e., about how the Tonal Device contains all of the limitations in claim 1 of the patents-in-suit) could have been more robust. To a great degree, they appear to simply track the language of the claims and assert that the Tonal Device contains those limitations (i.e., if claim 1 of the '767 patent requires, *inter alia*, a cable exercise machine with a "tower," a "first pull cable," a "second pull cable," a "first vertical guide," a "second vertical guide" and a "control panel," then the counterclaims just allege that the Tonal Device has a "tower," "pull cables," "vertical guides" and a "control panel"). (D.I. 12 at 6; D.I. 14 at 5-6) It would have been better, for example, if ICON had at least included a picture of the Tonal Device along with these allegations, or if it had provided some explanation of what portion of the

5

what it is that Tonal did to encourage (i.e., induce) those users to infringe, ICON alleges that "Tonal provides instruction[s] to users of the Tonal Device, through user manuals and online through Tonal's websites, how to use the Tonal Device in a manner embodied by one or more of the claims of the [patents-in-suit]." (*Id.* at 11, 13)

Now it is true, as Tonal notes, (D.I. 12 at 5-6), that ICON does not provide any more information about what was written in those manuals or websites. In some cases, that lack of detail might make a difference and result in the grant of a motion to dismiss. But here, when we are dealing with apparatus claims,[4] and when the pleading sufficiently explains how the accused product includes all of the limitations required by the claims (such that just about any customer "use" of the device necessarily amounts to direct infringement), ICON did not need to do a whole lot to show the requisite "encouragement" of infringement. As long as the Court can reasonably infer that the manuals/websites at issue conveyed a message akin to "Use the Tonal Device!" then that should be enough to plausibly allege such encouragement. *See Cipla Ltd. v.*

---

Tonal Device is the thing that amounts to a "tower," "pull cables," "vertical guides" or a "control panel" and the like.

But in the Court's view, the allegations are (barely) sufficient to plausibly demonstrate why if someone makes/uses/sells/offers to sell/imports the Tonal Device, then they directly infringe. For one thing, the claims and the accused product are not overly complex. (Tr. at 22) Moreover, the Court recognizes that it may be hard to allege that an accused product has a "cable" or a "control panel" for example, without using the word "cable" or "control panel." And perhaps more significantly, Tonal did not move to dismiss ICON's allegations of direct infringement. (*Id*. at 8) So Tonal is implicitly conceding that ICON's direct infringement allegations *do in fact* exceed the pleading bar—that is, that they do enough to explain why ICON believes that the Tonal Device reads on the claim limitations, and why it is plausible that the making/using/offering for sale/selling/importing of the Tonal Device amounts to direct infringement. (D.I. 13 at 6; Tr. at 17, 23) If Tonal is not going to fight that fight, why should the Court do so for it?

[4] The Court's conclusion might be different if the claims at issue were method claims, and if Tonal was alleged to infringe only if it used the accused product *in a particular way* that mirrored the claimed method.

6

*Sunovion Pharms. Inc.*, 174 F. Supp. 3d 869, 872 (D. Del. 2016) (concluding that the complaint adequately alleged inducement where the "patented compound is (allegedly) the only active ingredient in [the accused drug product,]" such that "one can reasonably infer that any use of [the [accused drug product] will constitute infringement[,]" and where the complaint "allege[d] that [d]efendant sells and offers to sell [its accused drug product] to consumers, who it can be reasonably inferred will then use [the accused drug product in an infringing manner]"); (Tr. at 25-27). And the Court can make that inference here based on what is pleaded.

Tonal's second argument is that ICON has failed to plausibly allege that Tonal acted *while knowing (and specifically intending)* that its acts would promote infringement. (D.I. 12 at 6-7; D.I. 14 at 5-6) However, Tonal acknowledges that when it received ICON's August 21, 2020 letter, it then knew of the existence of the patents-in-suit. (D.I. 12 at 6; *see also* D.I. 8 at 10 (referencing the letter)) And the Court disagrees with Tonal that its receipt of this letter is insufficient evidence—at the *pleading stage*—to plausibly assert Tonal's knowledge of its infringement or its specific intent to induce infringement. (D.I. 12 at 6-7) The August 21, 2020 letter identified the accused product (the Tonal Device), it stated that the product infringed claim 1 of the patents-in-suit, and it explained (albeit, in a very basic way)[5] what components the Tonal Device contained, such that the product, in fact, read on the claims' limitations. (D.I. 1, ex. C; *see also* D.I. 13 at 7)

---

[5] The way that the letter explains how the Tonal Device reads on claim 1 of the patents-in-suit is similar to how the counterclaims describe why use of that device directly infringes the claims. (*Compare* D.I. 1, ex. C at 1-2, *with* D.I. 8 at 10) And again, Tonal is not asserting that counterclaims fail to plausibly explain why Tonal directly infringes. So the Court is hard-pressed to see why, after Tonal received the August 21, 2020 letter, it did not then (or soon after) understand how ICON was alleging that the Tonal Device infringed the asserted patents.

To be sure, it could well be that when it received this letter, Tonal "read[] the patent[s'] claims differently from" ICON, such that Tonal then did not truly know that it was infringing. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 642 (2015). But that would be a question of fact to be resolved at the proof stage. We are at the pleading stage, where ICON gets the benefit of all reasonable inferences. And it is a reasonable inference that (1) if Tonal received the August 21, 2020 letter, and (2) if what ICON says is true about how the Tonal Device infringes the patents-in-suit, then (3) Tonal did then know of its infringement thereafter. *Cf. Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. 2010) (holding that a reasonable juror could determine that the defendant possessed the requisite knowledge for contributory infringement, based on the fact that the defendant received a letter accusing its products of infringing the patents-in-suit, and then thereafter sold products containing the allegedly infringing component); *Tarkus Imaging, Inc. v. Adobe Sys., Inc.*, C.A. No. 10-63-LPS, 2012 WL 2175788, at *4 (D. Del. June 14, 2012) (same, as to the knowledge and specific intent elements of an induced infringement claim).[6]

Therefore, the Court recommends that the Motion be denied to the extent it seeks dismissal of the counterclaims for induced infringement.

### 2. Contributory Infringement

---

[6] Tonal makes two other arguments about induced infringement that are not persuasive. One is that the counterclaims do not sufficiently plead Tonal's knowledge of its infringement, because they never use the phrase "with the knowledge [that Tonal infringed]." (D.I. 12 at 7) The other is that the counterclaims never state that Tonal provided the relevant instructions to infringe in its manuals or on its websites "after August 21, 2020" (i.e., the date of the notice letter). (D.I. 14 at 6) As noted earlier, these counterclaims are not a model of clarity. But in the Court's view, the counterclaims surely do mean to be asserting these things. And when one reads all of the allegations together, it is reasonable to infer that what is being alleged is that Tonal, in fact, had the requisite knowledge, and Tonal provided the requisite encouragement after August 21, 2020.

To make out a claim of contributory infringement, a patentee must plead facts plausibly demonstrating, *inter alia*, that an alleged contributory infringer has sold, offered to sell or imported into the United States "a component of a patented machine . . . constituting a material part of an invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use[.]" 35 U.S.C. § 271(c); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009).

Tonal is correct that this claim should be dismissed, for at least two reasons.

For one thing, as is noted above, in order to state a claim for contributory infringement, ICON must plead, *inter alia*, that Tonal sells a "component" of a patented machine. But as Tonal notes, (D.I. 14 at 8), in the counterclaims, ICON is alleging that *the Tonal Device itself* is the infringing product and that the making/using/selling/offering to sell/importing of that entire device constitutes direct infringement. The Court agrees with Tonal that the "Tonal Device itself cannot be a 'component' of a patented machine, because ICON [is alleging] that the Tonal Device *is* the patented machine, and thus directly infringes the asserted patents." (*Id*. (emphasis in original)); *see Bench Walk Lighting LLC v. LG Innotek Co., Ltd*., Civil Action No. 20-51-RGA, 2021 WL 65071, at *11 (D. Del. Jan. 7, 2021) (recommending grant of a motion to dismiss a claim of contributory infringement because, *inter alia*, "Plaintiff's FAC seems to be alleging that the Accused LED Products themselves allegedly satisfy the limitations of the asserted claims before their incorporation into any combination—i.e. not contributory infringement") (internal quotation marks, brackets and citations omitted), *report and recommendation adopted* 2021 WL 1226427 (D. Del. Mar. 31, 2021); *see also HSM Portfolio LLC v. Fujitsu Ltd.*, Civil Action No. 11-770-RGA, 2014 WL 4468088, at *1 & n.2 (D. Del.

Sept. 9, 2014) ("Toshiba's main argument is that the accused semiconductor chips are not components especially designed for an infringing product because they are accused of direct infringement in and of themselves. I agree.").

Moreover, even if the counterclaims could be read to suggest that Tonal sells a component of a patented machine, they would still not state a claim for contributory infringement because they do not allege that any such component has "no substantial non-infringing use." *Lucent Techs.*, 580 F.3d at 1320. Indeed, in its pleading, ICON does not even use that term. Nor does it reference, either directly or indirectly, any other of the various the elements of a contributory infringement claim.

Ultimately, during oral argument, ICON's counsel acknowledged that any contributory infringement counterclaim was insufficiently pleaded and should be dismissed. (Tr. at 27-28) For all of these reasons, the Court recommends that the Motion be granted to the extent it seeks dismissal of the counterclaims for contributory infringement.

## B. Willful Infringement

Tonal also moves to dismiss ICON's counterclaims of willful infringement. "[I]n order to sufficiently plead willful infringement, a [patentee] must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent[s]-in-suit; (2) after acquiring that knowledge, it infringed the patent[s]; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent[s]." *Välinge Innovation AB v. Halstead New England Corp.*, Civil Action No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018), *report and recommendation adopted* 2018 WL 11012901 (D. Del. Nov. 6, 2018).

Tonal primarily argues ICON has failed to meet the third element for pleading willful infringement referenced above. As to this element, "it stands to reason that there must be some other factual allegations [aside from the allegation that the infringer knew of the patent's existence] that go to the accused infringer's subjective intent to infringe—i.e., that plausibly demonstrate that the accused infringer not only knew of the patent-in-suit, but also knew or should have known that what it was doing (and what it continued to do) amounted to infringement of that patent." *Id*. at *13.

In the Court's view, a patentee will typically have done enough to plausibly satisfy this third element if it pleads facts indicating that: (1) prior to suit, it sent the alleged infringer one or more notice letters, in which it identified the relevant patents, identified the accused product and explained in sufficient detail why it was that the product infringes the patents; and (2) thereafter, the alleged infringer continued to engage in infringing activities. *Id*. at *13 (citing *Bio-Rad Labs. Inc. v. Thermo Fisher Sci. Inc.*, 267 F. Supp. 3d 499, 501 (D. Del. 2017) and *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 16-CV-885 (JPO), 2017 WL 74729, at *6 (S.D.N.Y. Jan. 4, 2017)). And that is just what ICON alleges here: that with the August 21, 2020 letter, ICON put Tonal on notice that the Tonal Device infringed the patents-in-suit, it explained how that was so, and that afterwards, Tonal "continue[d]" to infringe the patents-in-suit. (D.I. 8 at 10-12; *see also* D.I. 13 at 4-5) That Tonal is a competitor of ICON, and an entity that is well-familiar with exercise machines like the ones described in the patent claims cited in the letter, makes the inference of its going-forward knowledge only stronger. (D.I. 8 at 7-10); *cf. Acantha LLC v. DePuy Synthes Sales Inc.*, 406 F. Supp. 3d 742, 756 (E.D. Wis. 2019).

In its briefing, Tonal suggested that because it filed the instant declaratory judgment Complaint in this case (in which it denied infringement) less than three weeks after receiving the

August 21, 2020 letter, this forecloses the possibility that it could have been willfully infringing the patents-in-suit as of the date ICON filed its counterclaims. (D.I. 12 at 11) Again, this seems like a good argument for the proof stage. But surely there are cases where an accused infringer knows that it very likely infringes, but nevertheless argues the opposite in litigation. That is what ICON is suggesting has happened here. The Court offers no view as to whether ICON is right. It only concludes that what ICON is alleging is *plausible*.

Therefore, the Court recommends that the Motion be denied to the extent it seeks dismissal of the counterclaims for willful infringement.

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that the Motion be GRANTED to the extent it seeks dismissal of ICON's counterclaims for contributory infringement and that it be otherwise DENIED. With regard to the contributory infringement counterclaims, in light of what is set out above, the Court recommends that dismissal be with prejudice.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: May 4, 2021  /s/ Christopher J. Burke
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE