IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TONAL SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1197 (LPS) (CJB) |
| | ) | |
| IFIT INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| IFIT INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-652 (LPS) (CJB) |
| | ) | |
| TONAL SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**TONAL SYSTEMS, INC.'S OPENING LETTER IN CONNECTION WITH THE DISCOVERY DISPUTE TELECONFERENCE SCHEDULED FOR FEBRUARY 14, 2022**

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | Jack B. Blumenfeld (#1014) |
|  | Jennifer Ying (#5550) |
|  | 1201 North Market Street |
| OF COUNSEL: | P.O. Box 1347 |
|  | Wilmington, DE  19899-1347 |
| Daralyn J. Durie | (302) 658-9200 |
| Timothy C. Saulsbury | jblumenfeld@morrisnichols.com |
| Bethany D. Bengfort | jying@morrisnichols.com |
| Andrew L. Perito |  |
| DURIE TANGRI LLP | *Attorneys for Tonal Systems, Inc.* |
| 217 Leidesdorff Street |  |
| San Francisco, CA  94111 |  |
| (415) 362-6666 |  |

February 2, 2022

Dear Judge Burke:

Defendant and declaratory judgment plaintiff Tonal Systems ("Tonal") respectfully submits this letter in connection with the discovery teleconference scheduled for February 14, 2022 (D.I. 46, 48).[1] As set forth below, Tonal requests that the Court adopt its proposal regarding the timing and nature of any email discovery in these cases (attached as Exhibit A), and further requests that the Court adopt Tonal's proposal for narrowing of asserted claims and prior art references (attached as Exhibit B).

## I.   Relevant Factual Background

Plaintiff and declaratory judgement defendant iFIT, Inc. ("iFIT") asserts that Tonal's Home Gym and Tonal App (the "Tonal Products") infringe all 183 claims of four iFIT patents, U.S. Patent Nos. 10,709,925; 10,758, 767, 10,953,268, and 10,967,214 (collectively, the "Asserted Patents"). The Asserted Patents are related – the '214 Patent is a continuation of the '767 Patent, and the '268 Patent is a continuation of the '925 Patent.

## II.   Email Discovery Should Be Limited To Discrete Issues and Should Occur After Substantial Completion of Document Production

Although iFIT has framed the issue as one of whether the Default Standard for Electronically Stored Information ("Default Standard") should apply, the dispute is one over the timing and nature of email discovery requests. Notably, when the parties negotiated and agreed to the Scheduling Order, the parties expressly opted out of adopting the Default Standard, electing to create their own ESI agreement. D.I. 31, Ex. 1 at 2, *see also* D.I. 32 at 2. Given that the technology at issue involves physical home fitness equipment and the scope of the patents relate to physical features and operation of the home fitness equipment, Tonal does not believe that email discovery would be the most efficient and fruitful sources of relevant information. Instead, the most relevant sources of information would likely come from general document production such as core technical documents and the like. As such, Tonal proposed limiting email discovery to discrete issues, rather than general business or product discovery; phasing email discovery to occur after the balance of document production was substantially complete; and limiting the number of custodians per producing party to three and the number of search terms per custodian to five.[2]

After exchanging drafts of a proposed ESI order, on the parties' January 14 meet and confer, Tonal asked iFIT to identify the specific issues for which iFIT believed email discovery would be necessary. iFIT identified only two specific issues: iFIT's allegation of willful infringement (which Tonal has moved to dismiss)[3] and iFIT's allegation of lost profits.[4] In an

---

[1]   Unless otherwise noted, all docket citations are to C.A. No. 20-1197.

[2]   As Tonal informed iFIT on the January 14 meet and confer, Tonal's proposal is largely adapted from the Model Stipulated Order Re: Discovery of Electronically Stored Information in Patent Litigation adopted by the District Court for the Northern District of California, a copy of which is attached as Exhibit C.

[3]   Tonal's motion is pending before the Court. C.A. No. 21-652, D.I. 10, 11, 14, 15.

[4]   While Tonal acknowledges that email communications may be relevant to the issue of willfulness, as noted *infra,* it remains unclear why email communications would be relevant to lost profits (and, even if so, why Tonal's email communications would be relevant). Tonal's

1

effort to reach a compromise, Tonal then proposed limiting email discovery to specific issues and phasing email discovery, except as to willful infringement. Given the limited nature of the specific issues for which iFIT identified that email discovery would be needed, Tonal further proposed limiting the number of custodians per producing party to five and the number of search terms per custodian to seven. iFIT responded by rejecting Tonal's proposal and instead demanding, for the first time, that the parties adopt the Default Standard. Tonal's compromise proposal is attached for reference as Exhibit E. Tonal's proposed modifications to the Default Standard (*see* Ex. A) adopt Tonal's compromise proposal's language regarding email discovery, and modifies Paragraph 3 solely to adjust the date of the exchange and reflect the proposed modifications to the number of ESI custodians.

iFIT's demand that the parties adopt unmodified the Default Standard is not reasonably tailored to the needs of this case—even under iFIT's own identification of issues for which it believes email discovery is necessary—and contradicts the parties' express agreement not to adopt the Default Standard. *See* D.I. 31, Ex. 1 at 2; D.I. 32 at 2. Conversely, Tonal does not propose the parties forgo all email discovery. Aside from iFIT's allegation of willful infringement, iFIT has raised no issues implicating Tonal's state of mind, knowledge, or intent. Tonal's email communications will therefore be largely irrelevant to the claims and defenses in this case. The disputes between the parties primarily involve the Tonal Home Gym and the Tonal App, and the design and operation thereof. The information relevant to these issues is available from inspection of the Tonal Products themselves, in the technical and engineering documents about those products, and in the associated financial data regarding the Tonal Products (and the same is likely to be true regarding whatever embodying products iFIT identifies as the basis for its lost profits damages theory). iFIT has already received Tonal's production of core technical documents, including detailed schematics and assembly documents, and basic financial information regarding the Tonal Products. To the extent that general purpose discovery does not prove adequate information regarding the Tonal Products or any other issue in this case, iFIT (or Tonal) can pursue targeted email discovery under Tonal's proposed ESI Order.

For the same reason, iFIT's proposal to adopt the Default Standard that the parties expressly rejected is not reasonably tailored to the needs of this case as to the number of custodians and search terms that the Default Standard provides. Email discovery will likely only be relevant, proportional, and non-duplicative for specific, discrete issues in this case, not general product or business discovery. And iFIT's identification that only willfulness and lost profits may necessitate email discovery supports this conclusion. Simply adopting the Default Standard's provision for 10 custodians per producing party and 10 search terms per custodian, without accounting for the limited issues for which iFIT identified email as being needed, does not account for the limited needs of this case, and would result in unnecessary and excessive discovery costs.

Courts have routinely found that email discovery should be staged or limited because the speculative benefit of general-purpose email discovery is vastly outweighed by the certain burden and expense. *See* Fed. R. Civ. P. 26(b)(2)(C). Collecting, processing, reviewing, and producing email ESI is incredibly burdensome and expensive, particularly in patent cases, and courts in this District have frequently limited email discovery in such cases. *See, e.g.*, *In re Sensipar Antitrust*

---

compromise proposal thus permits iFIT to proceed immediately with the one issue iFIT identified as relevant to Tonal's email communications, while email discovery—if any is necessary—regarding lost profits will wait to proceed until the second phase.

2

*Litig.*, C.A. No. 19-396 & 19-2895, D.I. 46 (D. Del. June 12, 2019) (scheduling order phasing custodial searches after production of non-custodial materials) (Ex. D); *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, C.A. No. 17-189, D.I. 25 (D. Del. July 31, 2017) (scheduling order with two-track discovery) (Ex. F); *Int'l Construction Products LLC v. Caterpillar Inc.*, C.A. No. 15-108, D.I. 95 (D. Del. February 24, 2017) (same) (Ex. G); *Cloud Farm Assoc. LP v. Volkswagen Grp. of Am. Inc., et al.*, C.A. No. 10-502, D.I. 90 at 18–19 (D. Del. October 3, 2011) (denying email discovery in patent case because email would not be probative of how the accused system functioned) (Ex. H).

For the foregoing reasons, Tonal respectfully requests that the Court adopt Tonal's proposed language in the Proposed ESI Order (Ex. A), which reflects the parties' agreement on other discovery issues including production format protocol for ESI.

**III. Narrowing of Asserted Claims and Prior Art References**

Although iFIT only identified a single claim for each Asserted Patent in its Amended Complaint (C.A. No. 21-652, D.I. 7) and Counterclaims (C.A. 20-1197, D.I. 8), in its December 22, 2021 identification of asserted patents and accused products, iFIT stated that it was now asserting every single claim of the four Asserted Patents—namely, three independent claims per patent plus 171 dependent claims—for a total of 183 claims, or 45.75 claims per patent. Since this massive expansion—apparently based on publicly available information—Tonal has produced its core technical documents and revenue information regarding the Tonal Products. Given that iFIT had the needed information to expand its infringement case *over forty-fold* before even receiving Tonal's core production, it is reasonable to expect that, after reviewing Tonal's production and drafting its detailed infringement contentions, iFIT has the necessary information to comfortably narrow its case only five-fold to 36 claims per patent (or nine claims per patent).

iFIT's assertion of 183 claims is unmanageable not only for claim construction, but also and, more urgently, invalidity contentions, which are currently due on March 11, 2022. On January 11, 2022, Tonal sent iFIT a letter articulating the need for narrowing the number of asserted claims in order to both avoid unnecessary burden and expense and in order to conform with typical Delaware practice. The parties exchanged proposals, but could not reach agreement. A comparison of iFIT's January 26 proposal and Tonal's January 27 counter-proposal is below:

| Event | Tonal's Proposal | iFIT's Proposal |
|---|---|---|
| First claim narrowing | 36 claims by February 11, 2022 (the date iFIT serves its initial infringement contentions) | 120 claims by March 25, 2022 (two weeks after Tonal serves its initial invalidity contentions) |
| First prior art narrowing | 50 references by March 11, 2022 (the date Tonal serves its initial invalidity contentions) | 50 references and 75 grounds by June 2, 2022 |
| Second claim narrowing | 12 claims within 21 days of *Markman* order (the date for final infringement contentions) | 40 claims by May 19, 2022 (the date iFIT serves its opening claim construction brief) |
| Second prior art narrowing | 30 references and 60 grounds within 21 days of iFIT's final infringement contentions (the | 30 references and 50 grounds within 21 days of iFIT's final infringement contentions (the |

| Event | Tonal's Proposal | iFIT's Proposal |
|---|---|---|
| | date for final invalidity contentions) | date for final invalidity contentions) |
| Third claim narrowing | - | 20 claims within 21 days of *Markman* order (the date for final infringement contentions) |

    Tonal's proposal is in line with typical claims narrowing in this Court both in terms of its timing and the number of claims and prior art references.  *See, e.g., Vaxcel International Co. Ltd. v. HeathCo LLC*, C.A. No. 20-224, D.I. 48 (D. Del. Jan. 12, 2021) (narrowing claims from 167 claims across 11 patents to 100 (or nine claims per patent) by initial infringement contentions and further to 33 (or 3 claims per patent) prior to *Markman*, and narrowing prior art to 50 references by initial invalidity contentions and further to 30 references within 21 days of final infringement contentions) (Ex. I); *Nuvasive, Inc. v. Globus Med., Inc.*, C.A. No. 10-849, D.I. 88 at 17:20-23 (D. Del. Nov. 23, 2011) (narrowing prior to invalidity and non-infringement contentions and claim construction) (Ex. J); *Collegium Pharm., Inc. v. Teva Pharms. USA, Inc.*, C.A. No. 18-300, Oral Order (D. Del. Aug. 6, 2018) (narrowing claims from 229 claims across 11 patents to 66 (or six claims per patent) before *Markman*, and further to 33 (or three claims per patent) before final infringement contentions) (Ex. K); *Intellectual Ventures I, LLC v. Check Point Software Techs. Ltd.*, C.A. No. 10-1067, D.I. 162 at 31 (D. Del. Nov. 3, 2011) (narrowing claims from 48 claims across four patents to 20 (or five claims per patent) in advance of the claim construction stage of the litigation) (Ex. L); *Personalized User Model LLP v. Google, Inc.*, C.A. No. 09-525, D.I. 88 (D. Del. Sep. 8, 2010) (narrowing claims from 88 claims across three patents to 15 (or five claims per patent) in advance of claim construction briefs) (Ex. M).

    By contrast, iFIT's proposal delays any narrowing until after Tonal's preparation of invalidity contentions, burdening Tonal with a huge number of claims, more than two thirds of which iFIT proposes to drop right before it serves its opening claim construction brief.  Notably, iFIT's proposed reduction from 120 claims to 40 claims would not occur until *after* the parties have engaged in identification of claim terms for construction and after the parties are to submit a joint claim construction chart.  In doing so, iFIT both complicates the parties' ability to present an appropriate (and reasonably narrowed) set of claim construction disputes for the Court, but also prejudices Tonal by forcing it to address as many as 183 claims in its initial invalidity contentions.  iFIT seeks the advantage of evaluating which of its 183 claims to eliminate based on Tonal's contentions and not on the unique issues raised by the claims that iFIT selects for its own infringement case.  To the extent that iFIT argues that the prejudice to Tonal is diminished because of the overlap in specifications across the related patents, this merely proves that iFIT should have little difficulty in eliminating overlapping claims.  iFIT's proposal compounds this prejudice by seeking to limit Tonal to 50 prior art references to address 120 claims—or more than two claims per reference.  Furthermore, iFIT's proposal for 20 claims after *Markman*—or 5 claims for each related patent—remains unnecessarily large for the expert report and dispositive motions stages in light of the four closely related patents asserted here.

    In view of the foregoing, Tonal respectfully requests that the Court adopt Tonal's proposal for narrowing of asserted claims and prior art references (Ex. B).

                                                    Respectfully,

                                                    */s/ Jennifer Ying*

                                                    Jennifer Ying (#5550)

cc: All counsel of record

5