# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TONAL SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 20-1197-LPS-CJB |
| ) | |
| IFIT INC., ) | |
| ) | |
| Defendant. ) | |

| | |
|---|---|
| IFIT INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 21-652-LPS-CJB |
| ) | |
| TONAL SYSTEMS, INC., ) | |
| ) | |
| Defendant. ) | |

## IFIT'S FEBRUARY 9, 2022 LETTER TO THE HONORABLE CHRISTOPHER J. BURKE REGARDING DISCOVERY DISPUTE

OF COUNSEL:

David R. Wright
Alexis K. Juergens
FOLEY & LARDNER LLP
299 South Main Street, Suite 2000
Salt Lake City, UT 84111

Michael R. Houston
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654

Dated: February 9, 2022

Frederick L. Cottrell, III (#2555)
Christine D. Haynes (#4697)
Valerie A. Caras (#6608)
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
haynes@rlf.com
caras@rlf.com

*Attorneys for iFIT, Inc.*

Dear Judge Burke:

Plaintiff and declaratory judgment defendant iFIT Inc. ("iFIT") hereby responds to Tonal Systems, Inc.'s ("Tonal") February 2, 2022 letter ("Letter") regarding email discovery and narrowing of asserted claims and prior art references.

1. **Email Discovery**

    a. **Email Discovery is Relevant to this Litigation**

First, Tonal mischaracterizes and misrepresents the discussions between the parties regarding the email discovery dispute. During the January 14 meet and confer, Tonal for the first time asked iFIT what specific issues it believed email discovery would be necessary. iFIT responded that it did not believe it would be productive to go through and list *all* of the ways that email discovery would be relevant to this case. iFIT said that willfulness and lost profits were just two examples of relevancy and that there are of course many other areas. During the call, iFIT expressly cautioned Tonal to not misrepresent or mischaracterize the record as iFIT only being able to identify two topics, but unfortunately, that's exactly what Tonal has done nonetheless. Tonal also claims that the parties expressly agreed to not adopt the Default Standard, but this is incorrect as well.

Tonal's incorrect characterization of the parties' prior conversations notwithstanding, emails are relevant to many topics herein. Starting with direct infringement, the parties are currently in a dispute regarding the sufficiency of Tonal's technical document production[1] to determine how the software aspects of Tonal's products work. Tonal is currently taking the position that the parties must mutually agree to exchange source code; however, emails should help answer many of the questions regarding how the software aspects of Tonal's products work, and production of such emails will be just as easy if not easier than undertaking the cumbersome procedures the parties have in place for exchanging and analyzing source code. (*See* D.I. 34, ¶ 9)

Another area in which emails are highly pertinent is induced infringement. Specifically, iFIT wants and should be entitled to discovery on Tonal's communications with its manufacturers, customers, and distributors of their products in order to support iFIT's inducement claims. Yet another area of relevance is lost profits. Email discovery is relevant regarding various aspects of proving up lost profit damages, such as customer demand for products having the infringing features, and discussions of whether this is a two-player market and whether non-infringing alternatives exist in the marketplace.

Finally, it should not be lost that the parties have already agreed that email discovery is relevant to willful infringement.[2] This means that Tonal will have to collect emails from relevant

---

[1] The parties are still exchanging correspondence on the issue and the issue is not yet ripe for court intervention.

[2] Tonal states in its Letter that it has moved to dismiss iFIT's allegation of willful infringement. However, it is important to note that Tonal's motion to dismiss willful infringement in the 1:20-cv-1197 case was denied, and in the 1:21-cv-652 case Tonal's motion to dismiss willful

custodians and keyword search them regardless.  The fact that this effort will already occur significantly lessens the burden for email collection in general.

Given the relevance of email discovery to many of the issues in this case, iFIT simply was not willing to agree to Tonal's demands that such discovery be delayed and as significantly curtailed as Tonal was demanding (their proposal sought to drastically limit custodians, keywords, topics, and timing).  That said, iFIT offered to limit custodians and to exchange keywords in advance so that checks could be done to make sure that an inordinate amount of emails were not inadvertently and unnecessarily swept into an otherwise good-faith attempt to obtain reasonable email discovery as relevant to the case (*See* Ex. C.) Given Tonal's all-or-nothing approach, iFIT believes that the best solution at this point is to rely on the district's Default Standard as a starting point, which the parties can still agree to modify to lessen any significant burden from email collection.

Tonal has not shown that this case merits departure from the district's well-reasoned default ESI order. The Default Standard itself provides that "Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-26.  In the event the parties are unable to agree on the parameters and/or timing of discovery, the following default standards shall apply until further order of the Court or the parties reach agreement." (Default Standard, ¶ 1a). That is all iFIT seeks here.

### b. **Tonal's ESI Proposal is too Restrictive**

Even if the Court were inclined to consider some additional limits on email discovery beyond the Default Standard, Tonal's proposal is far too restrictive. Why only 5 custodians? Why only 7 search terms? How is iFIT supposed to know what 7 words to use that will reasonably capture emails relevant to the various topics identified above? Tonal's proposal puts the onus on the requesting party to *guess* what terms *may* hit on relevant information[3] rather than requiring the party who is in possession of the relevant information and documents to utilize search terms that will hit on relevant information.[4]  It is worth noting that even in the cases Tonal cites wherein email discovery was phased, *none* of them imposed a limitation on the number of custodians and search terms like Tonal now proposes.

Just as significantly, Tonal also seeks to limit any email discovery to "discrete issues, rather than general business or product discovery."  It is unclear exactly what limitations this

---

infringement was only partially granted, with a recommendation that iFIT be given leave to amend.

[3] *See* D.I. 43, Ex. E at ¶¶ 12–13 ("Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests; Each requesting party shall limit its email production requests to t total of seven search terms per custodian per party.") (emphasis added)

[4] It appears that Tonal may be misunderstanding the Default Standard, as it properly puts the onus on the producing party to utilize search terms that would provide responsive and relevant documents, and then share those search terms with the requesting party who may then ask for additional search terms on top of the ones already identified by the producing party.  (Default Standard, ¶ 5b)

proposal entails, but it appears to require iFIT to identify the topics it is seeking discovery on, and to otherwise further limit iFIT's ability to seek relevant emails.[5] iFIT sees no reasoned basis whatsoever for this type of limitation, which only begs for future disputes between the parties regarding its interpretation and scope.

In view of the foregoing, iFIT respectfully requests that the Court adopt the Delaware Default Standard for Discovery. (*See* Ex. A).

### 2. **Narrowing of Asserted Claims and Prior Art References**

The dispute on narrowing the asserted claims and prior art references simply involves the timing and extent of narrowing. iFIT is asserting four patents against Tonal, which together constitutes 183 claims among all four patents.

#### a. **iFIT's Proposal is Compatible with this Court's Procedure**

iFIT does disagree with the principle of narrowing the claims (and prior art) in the case. However, iFIT should be provided "a full and fair opportunity to understand the case before eliminating claims and defenses from the case." *See Collegium Pharm., Inc. v. Teva Pharms. USA, Inc.*, C.A. No. 18-300, Oral Order (D. Del. Aug. 6, 2018) (D.I. 43, Ex. K) (emphasis added).

This should mean that, at a minimum, iFIT has the opportunity to ascertain what the issues are in the case via infringement and invalidity contentions, and claim construction issues. For this reason, iFIT proposes to narrow the number of claims to 120 after the parties exchange initial contentions, and then down to 40 claims ahead of Markman briefing, so that iFIT will have the benefit of knowing the issues before it has to substantially narrow, but yet such narrowing will occur ahead of substantive Markman briefing so as to minimize the burden on the Court.

By way of contrast, Tonal seeks to eliminate 147 claims out of 183 claims before initial contentions are even served. Such a drastic narrowing at that early date would be substantially prejudicial to iFIT. In addition, given that two of the patents are in this case by virtue of Tonal's own DJ filing, it should not be allowed to initiate the dispute on the one hand, and then demand a nearly instant reduction in the number of claims at issue on the other.

Tellingly, Tonal does not cite any cases involving this many asserted claims where the Court ordered such a severe reduction at the time initial infringement contentions. In fact, the *Collegium Pharm.* case is actually more supportive of iFIT's position, stating that "[t]he Court's typical procedure is to allow for a first cut-down of asserted claims and Section 102/103 related defenses **after initial contentions are completed**, in order to ensure that the parties have a full and fair opportunity to understand the case before eliminating claims and defenses from the case." (*see* D.I. 43, Ex. K) (emphasis added). Accordingly, iFIT's proposal to eliminate 63 claims *after*

---

[5] To the extent Tonal's concern is that one of the keywords will be especially broad, (1) that problem is only made worse by Tonal's attempted limitation to only 7 keywords, which will force the requesting party to choose broader terms in order to not miss relevant emails, and (2) iFIT addressed this concern by proposing a pre-check of keywords to make sure none returned an unreasonably large number of hits.

3

Tonal's initial invalidity contentions is actually *compatible* with the typical procedure utilized by this Court, as evidenced by *Collegium Pharm.*

Furthermore, as mentioned above, the parties currently have an on-going dispute about Tonal's technical document production, and iFIT disagrees with Tonal's statement that it has "produced its core technical documents." (D.I. 43 at 3). After reviewing the documents Tonal produced as its "core technical documents," iFIT believes the production is missing software specifications and design documents that are important to iFIT's soon-due contentions. How can iFIT assess what claims merit keeping versus dropping if it cannot properly assess infringement?

In sum, iFIT is not refusing to narrow its claims—iFIT simply asks that it be provided the opportunity to assess sufficient information (i.e., Tonal's initial invalidity contentions and initial arguments on claim construction) before it substantially narrows its number of asserted claims.

b. **Tonal's Cited Cases are Inapposite to Tonal's position**

Tonal cites a litany of cases that allegedly support its position regarding the narrowing of claims. However, almost none of these decisions involved claim narrowing *before* initial infringement contentions. Rather, the cases focused on claim narrowing prior to the Markman hearing (just as iFIT proposes here). *See, e.g., Nuvasive, Inc. v. Globus Med., Inc.*, C.A. No. 10-849, D.I. 88 at 17:20–23 (D. Del. Nov. 23, 2011) (court ordering a narrowing of claims before the date of the parties' answering/responsive Markman briefs) (*see also* Ex. D, p. 6 for *Nuvasive, Inc.* scheduling order); *Collegium Pharm.,* Oral Order (D. Del. Aug. 6, 2018) (noting explicitly that claim reduction should not occur until *after* initial contentions are completed); *Intellectual Ventures I, LLC v. Check Point Software, Techs. Ltd.*, C.A. No. 10-1067, D.I. 162 (D. Del. Nov. 3, 2011) (ordering a narrowing of claims *after* initial infringement and invalidity contentions) (*see also* Ex. E at 3 wherein defendants in *Intellectual Ventures* inform the court that it had provided "extensive invalidity contentions" for *all* claims that plaintiff initially asserted).

Of further note, in its letter Tonal misstated the ruling in the *Personalized User Model LLP v. Google, Inc.*, C.A. No. 09-525, D.I. 88 (D. Del. Sept. 8, 2010) case. Tonal included a parenthetical for *Personalized User Model* stating that the court narrowed "from 88 claims across three patents to 15 (or five claims per patent) in advance of claim construction briefs." In addition to this parenthetical, Tonal included only a few pages from D.I. 88, which is a transcript from a discovery dispute hearing. However, reviewing the transcript in its entirety shows that the court did not order a narrowing from 88 claims to 15 claims, but rather, Plaintiff voluntarily reduced the number of claims from 88 claims, to 67 claims, to 36 claims. *See* Ex. F at 4:20–22; 22:25–23:9. The court then ordered defendants to chart invalidity contentions in response to all 36 asserted claims, and only *after* the invalidity contentions, a reduction to 15 claims. (*see* Ex. F at 26:12–18.)

In view of the foregoing, iFIT respectfully requests that the Court adopt iFIT's proposal for narrowing of asserted claims and prior art references. (Ex. B.)

                                Respectfully,

                                */s/ Frederick L. Cottrell*

                                Frederick L. Cottrell, III (#2555)

cc:      Counsel of Record (via CM/ECF)