# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TONAL SYSTEMS, INC., ) | |
| ) | |
| Declaratory Judgment ) | |
| Plaintiff and Defendant, ) | C.A. No. 20-1197 (GBW) (CJB) |
| ) | |
| v. ) | CONSOLIDATED |
| iFIT, INC. ) | |
| ) | |
| Declaratory Judgment ) | |
| Defendant and Plaintiff. | |

### IFIT, INC.'S OPPOSITION TO DECLARATORY JUDGMENT PLAINTIFF AND DEFENDANT'S MOTION TO STAY PENDING *INTER PARTES* REVIEW

OF COUNSEL:

David R. Wright
Alexis K. Juergens
Adam A. Aquino
FOLEY & LARDNER LLP
95 South Main Street, Suite 2500
Salt Lake City, UT 84111

Michael R. Houston
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654

Frederick L. Cottrell, III (#2555)
Christine D. Haynes (#4697)
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
haynes@rlf.com

*Attorneys for iFIT, Inc.*

Dated: January 13, 2023

Dear Judge Burke:

  iFIT, Inc. ("iFIT") respectfully submits this letter in opposition to Tonal Systems, Inc.'s ("Tonal") motion to stay this case pending resolution of the *inter partes* review ("IPR") petitions concerning U.S. Patent Nos. 10,953,268 (the "'268 patent") and 10,967,214 (the "'214 patent") (collectively "IPR Patents"). D.I. 141,[1] Ex. 1-2. Courts consider three factors to determine whether a stay is appropriate: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage. *CAO Lighting, Inc. v. Gen. Elec. Co.*, No. 20-681-GBW, 2022 WL 17752270, *2 (D. Del. Dec. 19, 2022). Because the facts of this case weigh strongly against granting a stay, iFIT requests that Tonal's Motion to Stay be denied.

  **I.** **A Stay untilCompletion of the IPRs Will Not Simplify the Issues for Trial**

  A stay will not materially simplify the issues in this case. In *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, this Court ruled that the issues are not sufficiently simplified when: (1) a PTAB decision, even one that is entirely favorable, will leave behind many claims to be litigated because many of the claims were not a part of the IPR; (2) the scope of issues in the litigation exceeds the scope of issues that can be examined during IPR; and (3) it is likely that there will not be a significant overlap in discovery between that needed for the IPR and that needed for the litigation. 193 F. Supp. 3d 345, 348–350 (D. Del. 2016).

  a. *Many asserted claims in this litigation are not subject to the IPRs*

  The IPRs challenge a total of 19 claims across the two IPR Patents. Five asserted claims from the IPR Patents remain unchallenged in the IPRs, as do all 12 asserted claims from U.S. Patent Nos. 10,709,925 (the "'925 patent") and 10,758,767 (the "'767 patent") (collectively "Unchallenged Patents"). Consequently, only about half of the claims asserted in the litigation (19 of 36) are even at issue in the IPRs.

  This Court has held that a PTAB decision that invalidates 50% of the asserted claims would still "leave behind a lot to…be litigated," thereby weighing against a stay. *Toshiba Samsung*, 193 F. Supp. 3d at 349. Notably, even if both IPRs were 100% successful, the litigation would still proceed on all four of the asserted patents, and two patents would be completely unaffected, further weighing against a stay. *See Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*, No. 13-2012-SLR/SRF, 2015 WL 5145526 (D. Del. Sept. 1, 2015) (denying a stay where three patents were asserted in the litigation, but the IPR proceedings covered all asserted claims of only one patent, all but two asserted claims of the second patent, and no asserted claims of the third patent). These facts favor denying the motion to stay.

  b. *There are several issues in this litigation that are not subject to the IPR*

  The scope of the issues in this litigation exceeds the scope of issues to be examined in the IPRs. The PTAB's review of the '268 and '214 patents are *limited* to questions of invalidity based solely on printed publication prior art. But the PTAB will not be assessing any of Tonal's other

---

[1] All citations to the docket are citations to 1:20-cv-1197 unless otherwise indicated.

defenses, which include arguments related to infringement, anticipation, indefiniteness, lack of written description, lack of enablement, obviousness-type double patenting, prosecution history estoppel, equitable relief, damages and costs, reverse doctrine of equivalents and inequitable conduct.[2] D.I. 1; C.A. No. 21-652, D.I. 1; D.I. 8; D.I. 24; D.I. 81. In addition, Tonal asserts several additional prior art references that form the basis of other 103 combinations in this litigation that are not included in the IPRs—7 additional prior art references for the '268 Patent and 7 additional prior art references for the '214 patent, not even counting the non-printed-publication prior art also raised by Tonal. Notably, Tonal has not provided a stipulation to forego invalidity challenges here in favor of the IPR proceedings. "The more that the scope of the issues to be resolved during the litigation exceeds the scope of the issues that can be examined during the IPR, the greater this cuts against a finding that an IPR proceeding will lead to great simplification of the issues at play [in the litigation]." *Princeton Digit. Image Corp. v. Konami Digit. Ent. Inc.*, No. 12-1461-LPS-CJB, 2014 WL 3819458, at *3 (D. Del. Jan. 15, 2014).

The additional legal issues/defenses in this litigation weigh against granting Tonal's motion to stay or at least weigh neutral. *See CAO Lighting*, 2022 WL 17752270 at *2 (finding the simplification-of-issues factor neutral where Defendant maintained a variety of defenses to the infringement claims); *3G Licensing, S.A. v. HTC Corp.*, No. 17-83-GBW, 2023 WL 34553, at *5 (D. Del. Jan. 4, 2023) (finding the simplification-of-issues factor neutral because significant issues would remain if the PTO did not invalidate all of the asserted claims including issues of infringement and invalidity defenses).

  c. *There is minimal discovery overlap between the IPRs and litigation*

Tonal alleges that the "PTAB will necessarily be determining if the prior art discloses nearly every other significant limitation in the asserted claims of all four Patents-in-Suit." D.I. 145 at 1. This is incorrect. A comparison of the asserted claims of the Unchallenged Patents and the challenged claims of the IPR patents reveals that there is almost no overlap at all. *See* Ex. A (comparison of Asserted Claims of Unchallenged '925 Patent and Challenged Claims of '268 Patent); Ex. B (comparison of Asserted Claims of Unchallenged '767 Patent and Challenged Claims of '214 Patent). Exhibits A and B show that of the 12 asserted claims from the Unchallenged Patents, there are only *two claims* that the current IPRs may overlap with.

While true that the '925 and '268 patents do have a similar claim 1 (neither of which are asserted in this litigation), the stark difference is that claim 1 of the '925 patent contains a "magnetic mechanism" limitation while claim 1 of the '268 patent contains an "electronic control panel" limitation. Tonal minimizes the importance of this difference by characterizing it as "minor," but that is inaccurate. The reality is that "magnetic mechanism" and "electromagnetic unit" are different from an "electronic control panel," as evidenced by the fact that Tonal has not made any showing that the prior art currently being utilized in the IPR proceedings for the "electronic control panel" limitation would be equivalent to the "magnetic mechanism"/"electromagnetic unit" limitations of the Unchallenged Patents.

It is also notable that the '268 patent does indeed have a "magnetic mechanism" limitation, but Tonal purposefully avoided challenging these claims of the '268 patent in the IPRs. *Compare*

---

[2] Tonal has represented that they will be filing inequitable conduct claims in the coming weeks.

2

Ex. D, claim 19 *with* D.I. 141, Ex. 2 at p. 2 (noting the absence of claim 19 from those challenged claims). The same can also be said for the '767 and '214 patents, except the '767 patent utilized "electromagnetic unit" instead of "magnetic mechanism." Thus, it appears that Tonal purposefully avoided challenging those claims of the '214 patent that utilized the term "electromagnetic unit." *Compare* Ex. E, claims 11, 30, and 57 *with* D.I. 141, Ex. 1 at p. 2 (noting the absence of claims 11, 30, and 57 from those challenged claims). If the difference between "magnetic mechanism"/"electromagnetic unit" and "electronic control panel" were so nontrivial, then why did Tonal not challenge these claims?

It is also noteworthy that of the claim terms at issue in the parties' *Markman* briefing, only two arise in the IPR challenged claims, and, of these, Tonal only offers a construction for one of them. *See* Ex. F at 17 (Tonal indicating that no terms from the '268 patent require construction, even though the term "tower" appears in the challenged claims); Ex. G at 17-18 (identifying only "force exerted by the user" as requiring construction); D.I. 141, Ex. 1 at 8 (Board declining to adopt any positions on claim construction for the '214 patent).

If anything, it appears that Tonal chose its IPR-challenged claims and the terms for claim construction here purposely to avoid overlap. In any event, given the minimal overlap between the claim construction issues in the litigation and the claims challenged in the IPRs, the IPR decisions will provide little to no simplification regarding claim construction issues.[3] Moreover, this Court will issue a claim construction ruling long before the PTAB (which might not even undertake any constructions at all (*see, e.g.*, D.I. 141, Ex. 2 at 8)).

Lastly, on top of the additional discovery required due to the differences in claims at issue, additional discovery will also be required for the issues that are asserted in this litigation but are not asserted in the IPR. This includes, infringement, anticipation, indefiniteness, lack of written description, lack of enablement, obviousness-type double patenting, prosecution history estoppel, equitable relief, damages and costs, reverse doctrine of equivalents and inequitable conduct, and the invalidity grounds raised by Tonal here but not in the IPRs. *See* D.I. 1; C.A. No. 21-652, D.I. 1; D.I. 8; D.I. 24; D.I. 81. This weighs in favor of denying Tonal's motion to stay.

## II.     Fact Discovery is Nearly Complete and a Trial Date has been set

The second factor analyzed when assessing a motion to stay is the "the status of the litigation, particularly whether discovery is complete and a trial date has been set." *See CAO Lighting, Inc.*, 2022 WL 17752270 at *2. The original DJ case by Tonal was filed over *two years* ago on September 8, 2020. D.I. 1. The parties have engaged in significant fact discovery, which is set to be completed by February 21, 2023. All briefing for claim construction is complete, with the

---

[3] Tonal relies on *IOENGINE, LLC v. PayPal Holdings, Inc.* to argue that a stay is warranted where the IPRs do not involve all of the patents at issue. 2019 WL3943058, at *9 (D. Del. Aug. 21, 2019). However, the court in *IOENGINE* focused on the fact that the PTAB had already construed two terms that were disputed in both the IPR and litigation and both terms applied to at least one claim from each of the patents asserted in litigation. *Id.* Here, there are no disputed terms common to all 4 asserted patents, and only two disputed terms are at issue in both the IPRs and litigation, with no indication thus far that the PTAB will endeavor to even construe them.

Markman Hearing set for February 14, 2023.[4] D.I. 147. And the trial timing has been affirmed at for the original December 11, 2023 date. D.I. 147.

This Court has denied stays in cases that had *more* time in fact discovery remaining and more time until trial. *See Life Techs. Corp. v. Illumina, Inc.*, No. 09-706-RK, 2010 WL 2348737, at *3–4 (D. Del. June 7, 2010) (finding that a stay was disfavored even when the close of fact discovery was five months away and no depositions have been noticed because a good deal of the discovery dealing with the litigation elements had been completed); *see also Hip, Inc. v. Hormel Foods Corp.*, No. 18-615-CFC, 2019 WL 7667104, at *1 (D. Del. May 16, 2019) (considering the fact that a trial date was set and being less than two months from the completion of discovery as factors that disfavor a stay). Thus, this factor weighs against a stay.

### III.  A Stay Will Unduly Prejudice iFIT

Courts consider the following factors in assessing undue prejudice towards the non-movant of a motion to stay: "(1) the timing of the request for review; (2) the timing of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *CAO Lighting, Inc.*, 2022 WL 17752270, at *11.

#### a.  *Tonal waited until the one year deadline in the second case to file its IPR petitions*

Tonal's original DJ action was filed over two years ago on September 8, 2020. D.I. 1. iFIT then filed a complaint alleging infringement on May 5, 2021 (*see* C.A. No. 21-652, D.I. 1). Tonal forewent IPR challenges on the first two patents, then waited the *full one year* to file IPRs on the second two patents. This lengthy, maximum delay favors denying Tonal's motion to stay.

#### b.  *The status of the IPR proceedings does not favor a stay*

Tonal presumes that the IPR proceedings will be completed by December 6, 2023 because they were instituted on December 6, 2022. D.I. 145. However, pursuant to 35 U.S.C. §316(a)(11), the Board can *sua sponte* extend its deadline by up to six additional months, and has done so in the past. *See, e.g.,* Ex. H (Board *sua sponte* extending deadline under parallel provision of 35 U.S.C. §326(a)(11)); Ex. I (Board *sua sponte* extending deadline under 35 U.S.C. §316(a)(11)). Accordingly, trial will occur at about the same time as any IPR decisions, if not before. Moreover, if a stay is granted here, the already set trial would be delayed until at least 2024, and possibly longer if the Final Written Decision is appealed. *See CAO Lighting, Inc.*, 2022 WL 17752270, at *3 (holding that the delay of trial disfavors a stay because "'delay inherently harms a non-moving party by prolonging resolution of the dispute.'"). The delay caused by the stay would unreasonably prolong resolution of the case—part of which has already been pending for over 2 years—and thus disfavors a stay.

---

[4] The parties previously had a Markman hearing set for December 2, 2022 but was vacated in the parties' joint stipulation to stay as the parties attempted to negotiate a resolution.

      c.     ***iFIT would be unduly prejudiced by a stay because the parties directly compete head to head***

An important factor in determining whether a stay will prejudice the non-moving party is whether the parties are direct competitors. *Davol, Inc. v. Atrium Med. Corp.*, No. 12-958-GMS, 2013 WL 3013343, at *3 (D. Del. June 17, 2013) (citations omitted); *Imagevision.net, Inc. v. Internet Payment Exchange, Inc.*, No. 12-054-GMS-MPT, 2013 WL 663535, at *6 (D. Del. Feb. 25, 2013). "It is well established that '[c]ourts are generally reluctant to stay proceedings where the parties are direct competitors.'" *Imagevision.net, Inc.*, 2013 WL 663535 at *6. When parties are direct competitors, there is a reasonable possibility that delay in the case will have "outsized consequences" to the party asserting infringement including potential loss of market share and erosion of goodwill. *Davol, Inc.*, 2013 WL 3013343 at *3 (citations omitted).

Tonal suggests that the market at issue is the fitness equipment market, and that this market includes a variety of active players. D.I. 145.[5] But this characterization is far too broad. The market covered by the asserted patents is that of an interactive, motor-controlled cable strength training device—a market which iFIT created in 2017 with its NordicTrack Fusion device. Ex. C, ¶ 4-7 ("Logan Decl."). iFIT and Tonal compete head to head, with no other major players, in this specialized market. Logan Decl., ¶ 11.

When iFIT announced the release of its Fusion product, companies began offering knock-off products. For example, Nautilus, Inc. introduced the Bowflex HVT in May 2017, which prompted iFIT to initiate legal proceedings to prevent the erosion of iFIT's market share in a fitness category that it created. Logan Decl., ¶ 8. Similar to its litigation against Nautilus, iFIT is protecting its market share in this litigation against Tonal. Logan Decl., ¶ 9-11. Tonal and iFIT are direct competitors as to the subject matter of this litigation, such that further delay will unduly prejudice iFIT through loss of market share and goodwill.

Tonal also suggests that a failure to seek a preliminary injunction suggests no prejudice when the question of direct competition is contested. D.I. 145. However, the failure "to seek a preliminary injunction is not dispositive as to the 'competition' issue." *Davol*, 2013 WL 3013343, at *4. Where there is little doubt that the accused products compete directly with the products of the party alleging infringement, "the court has little reason to consider whether a preliminary injunction was sought." *Id.* In this case it is clear that the accused product, the Tonal Device, competes directly with iFIT's line of Fusion products. Logan Decl., ¶ 9-10.

For the foregoing reasons, iFIT respectfully requests that the Court deny Tonal's motion to stay this litigation pending final written decisions in the '268 and '214 patent IPR proceedings.

---

[5] Tonal argues that iFIT has previously engaged in litigation on similar products in the fitness equipment market. D.I. 145-2. The only case listed that involved a competitor in the market for interactive, motor-controlled cable strength training devices is *ICON Health & Fitness, Inc. v. Nautilus, Inc.*, No. 3:19-cv-05217 (W.D Wash.). However, iFIT brought this legal proceeding to protect its market share in this specialized market. Nautilus no longer sells the Bowflex HVT product and is no longer a relevant player in this market. Logan Decl., ¶ 8.

  Respectfully,

*/s/ Christine D. Haynes*

Christine D. Haynes (#4697)

cc: Counsel of Record (via CM/ECF and E-mail)